UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

LANELL STEWART                                                    CIVIL ACTION

VERSUS

DAIGLE INDUSTRIES, LLC, ET AL.                          NO. 22-00487-BAJ-SDJ

---

## FIRST AMENDED AND SUPPLEMENTAL COMPLAINT FOR DAMAGES

**NOW INTO COURT**, through undersigned counsel, come Petitioner, **LANELL STEWART**, who, with full reservation of rights to plead further herein, respectfully avers as follows:

### I.  PARTIES

**1.**

Plaintiff made herein are **LANELL STEWART** (hereinafter collectively referred to as **"Ms. Stewart"**), who is a person of the full age of majority, residing and domiciliary of Denham Springs, Louisiana.

**2.**

Made Defendants herein are the following:

A. **DAIGLE INDUSTRIES, L.L.C.** **(**hereinafter referred to as **"Daigle Industries"),** a domestic limited liability company, domiciled in Ascension Parish, Louisiana, though currently not in good-standing, authorized to do and doing business in the State of Louisiana, who may be duly cited and served through registered agent, 1107 East Highway 30, Gonzales, LA 70737;

B. **ABC INSURANCE COMPANY** (hereinafter referred to as **"ABC"**), the exact name unknown at this point, who is believed to be the foreign or domestic insurance company, who is authorized to and transacting business in the State of Louisiana, who provides umbrella insurance to **DAIGLE INDUSTRIES, L.L.C.**  for damages prayed for herein;

hereinafter collectively referred to as "Defendants."

**3.**

That said Defendants are justly and truly indebted unto the petitioners made Plaintiffs in Section I, paragraph I, individually, jointly and *in solido*, for such damages as will fully and fairly compensate petitioners, all right with legal interests thereon from the date of judicial demand until paid, for costs of expert witnesses retained, for attorney fees, and for all costs of these proceedings for the following reasons, set forth in Section IV.

## II. JURISDICTION AND VENUE

### 4.

This Court has jurisdiction pursuant to Article 5, Section 16 of the Louisiana Constitution of 1974. The jurisdiction of the Court is founded upon 28 U.S.C. 1343 and 42 U.S.C. 200(e)-5(f)(3), Title VII of the Civil Rights Act of 1964, 29 U.S.C. 2601 et seq., Employment Discrimination Law ("LEDL"), La. R.S. 23:301, *et seq*., and the pendent jurisdiction of the Court.

### 5.

Venue is also proper in Ascension Parish, State of Louisiana pursuant to Louisiana Code of Civil Procedure articles 42 and pursuant to La. R.S. 23:303 is appropriate because it is in the district court in the parish in which the violation, discrimination occurred, and the sexual assault occurred, and substantial damages suffered by Plaintiff occurred in Ascension Parish.

## III. FACTUAL ALLEGATIONS

### 6.

Daigle Industries is a concrete company and independent trucking company which provides material haul services for R.J. Daigle & Sons. Daigle Industries also expanded its operation to include material hauling services to outside parties.

### 7.

Ms. Stewart, the only African American female truck driver, was hired on or about February 2019. Thereafter, on August 12, 2019, she was assigned to work as a truck driver at the Geismer plant.

**8.**

On the very same day, Ms. Stewart was chipping away concrete from her truck when, another employee of Daigle Industries, Mr. Noah (Last Name Unknown), who is also a truck driver, was waiting for a load of materials and was standing near his truck.

**9.**

Thereafter, Mr. Noah (Last Name Unknown) received his materials and was approved to go on the job site. Instead, Mr. Noah (Last Name Unknown) entered his truck, moved from the loading site, and stopped the truck directly in front of Ms. Stewart.

**10.**

Afterwards, Mr. Noah (Last Name Unknown) exited the truck, and then he pulled out his penis, while standing directly in front of Ms. Stewart.

**11.**

Mr. Noah (Last Name Unknown), despite having restrooms available nearby, began urinating in the open yard directly in front of Ms. Stewart.

**12.**

On the same day, Ms. Stewart spoke to Mr. Larry Gilmore, supervisor of Mr. Noah (Last Name Unknown), and also another employee of Daigle Industries, regarding the incident.

**13.**

Mr. Larry Gilmore responded by stating, "well, he was right there by the bathroom for like twenty minutes."

**14.**

Ms. Stewart then showed the location of where the incident occurred to Mr. Larry Gilmore.

**15.**

Mr. Larry Gilmore indicated that he would fire Mr. Noah (Last Name Unknown) as a result of his actions.

**16.**

Mr. Larry Gilmore then called Ms. Stewart on the phone to request the date and time in order to write-up Mr. Noah.

**17.**

Shortly afterwards, Mr. Larry Gilmore stated that he could not fire Mr. Noah (Last Name Unknown). When queried by Ms. Stewart as to the reason why, Mr. Larry Gilmore stated "I talked to Nicholas [Daigle] and he said we can't fire him. Instead, I have to coach him."

**18.**

Mr. Larry Gilmore added "because we can't fire him, don't mean you pull yourself out in front of any employee."

**19.**

On or about August 14, 2019, Ms. Stewart objected to being sexually harassed directly to Vicky Finch, Accounts Payable and Human Resources of Daigle Industries.

**20.**

Vicky Finch responded and stated that she would investigate and get back to her regarding her sexual harassment claim.

**21.**

Ms. Stewart also requested to speak to Nicholas Daigle, Chief Operation Officer, regarding the situation, but was never contacted.

**22.**

Ms. Stewart also made an objection to being sexually harassed to her supervisor, Ethan Daigle, Concrete Production Foreman, on or about August 21, 2019.

**23.**

Mr. Ethan Daigle, after hearing Ms. Stewart's incident, stated that he would have to get back to her about the process of filing a sexual harassment complaint.

**24.**

Instead, Mr. Ethan Daigle never contact Ms. Stewart regarding the process of filing a sexual harassment complaint.

**25.**

Around the end of August, 2019, Ms. Stewart saw Mr. Nicholas Daigle, Chief Operating Officer, while he was walking around his truck and approached him to discuss the incident and her desire to file a complaint.

**26.**

Mr. Nicholas Daigle advised Ms. Stewart that the incident she described would not constitute sexual harassment because Mr. Noah (Last Name Unknown) did not see Ms. Stewart before he pulled his penis out. Additionally, Mr. Nicholas Daigle commented that if he disciplined "all male drivers who pulled out their penis in front of female employees then he would have no drivers."

**27.**

5

During September of 2019, Ms. Stewart received a disciplinary infraction for a chain breaking on a truck she was operating.

**28.**

Mr. Ethan Daigle approached Ms. Stewart to discuss the disciplinary infraction. Ms. Stewart pointed out that other employees with the same circumstance were not disciplined. Ms. Stewart asked Mr. Ethan Daigle if she was being disciplined because she complained about the incident with Mr. Noah (Last Name Unknown) and if this was the company's way of forcing her to resign. Mr. Ethan Daigle responded that a policy was recently instituted which mandated that an employee receive a disciplinary infraction when a chain breaks on a operator's truck.

**29.**

Later in September, Ms. Stewart received a call from Mr. Ethan Daigle about another infraction. In that instance, Ms. Stewart was accused of taking over an hour to wash her work truck.

**30.**

However, when Ms. Stewart reviewed her time slip, it had several adjustments in the times including the times she clocked-in and clocked-out. When Ms. Stewart pointed this out to Mr. Ethan Daigle, he stated he would "look into it."

**31.**

On September 27, 2019, Mr. Ethan Daigle informed Ms. Stewart that the company accepted her resignation. When Ms. Stewart replied that she had not resigned, Mr. Ethan Daigle referenced their previous conversation where Ms. Stewart asked if the company was attempting to force her to resign.

**32.**

Mr. Ethan Daigle then informed Ms. Stewart that upon completion of her shift, she would no longer be employed at Daigle Industries.

**33.**

Later in the same week, Ms. Stewart called the main office and requested a letter of termination.

**34.**

The following day Ms. Stewart received a call from Ms. Vicky Finch where she was advised "Daigle Industries does not issue letters of termination." Ms. Stewart responded that she needed some form of documentation.

**35.**

Despite her request, Ms. Stewart did not receive a letter of termination until October 23, 2019. *See* **Exhibit 1, attached to Original Petition.**

**36.**

Plaintiff has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit pursuant to La. R.S. 23:303.

**IV. DAMAGES**

**37.**

The foregoing Defendants are liable unto the Plaintiff, Ms. Stewart, for acts, omissions, and representations of the nature which justify the damages to Plaintiff for the following reasons, to-wit:

Count One—Sexual Assault & Vicarious Liability & Respondeat Superior

**38.**

Plaintiffs incorporate the abovementioned paragraphs 1 through 37 by reference as though fully set forth herein.

**39.**

Louisiana Civil Code article 2315 provides that "[e]very act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." Further, Louisiana jurisprudence has found that Louisiana Civil Code article 2315 is broad enough to encompass a cause of action for sexual assault.

**40.**

Louisiana Revised Statute § 46:2184 provides that sexual assault means any nonconsensual sexual contact including but not limited to any act provided in R.S. 15:541(24) or obscenity (R.S. 14:106).

**41.**

Louisiana Revised Statute § 14:106(A)(1) defines obscenity is the intentional exposure of the genitals, pubic hair, anus, vulva, or female breast nipples in any public place or place open to the public view, or in any prison or jail, with the intent of arousing sexual desire or which appeals to prurient interest or is patently offensive.

**42.**

An employer may be vicariously liable for the intentional acts of its employees. La. C.C. art. 2320.

**43.**

At all times alleged herein, the actions and/or omissions committed by Mr. Noah (Last Name Unknown), pulling out his penis, while standing directly in front of Ms. Stewart, was on Daigle Industries premises and during the hours of employment.

**44.**

At all times alleged herein, the actions and/or omissions committed by Mr. Noah (Last Name Unknown), was reasonably incidental to the performance of the employee's duties as Mr. Nicholas Daigle commented that if he disciplined "all male drivers who pulled out their penis in front of female employees then he would have no drivers."

**45.**

At all times alleged herein, the actions and/or omissions committed by Mr. Noah (Last Name Unknown), was reasonably incidental to the performance of the employee's duties as Mr. Larry Gilmore stated that he could not fire Mr. Noah (Last Name Unknown). When queried by Ms. Stewart as to the reason why, Mr. Larry Gilmore stated "I talked to Nicholas [Daigle] and he said we can't fire him. Instead, I have to coach him."

**46.**

At all times alleged herein, Daigle Industries failed its duty to provide, foster, train its employees, and report Ms. Stewart's sexual assault.

**47.**

At all times alleged herein, Daigle Industries failed its duty to provide Ms. Stewart a workplace free from being sexually assaulted.

**48.**

The acts and/or omissions committed by Mr. Noah (Last Name Unknown) caused Mrs. Stewart to be exposed to sexual assault by having his intentional exposure of the genitals, pubic hair, anus in any public place or place open to the public view with the intent of arousing sexual desire or which appeals to prurient interest or is patently offensive.

**49.**

Accordingly, Daigle Industries liability for the resulting harm extends, as in most other cases of intentional torts, to consequences which it did not intend, and could not reasonably have foreseen, upon the obvious basis that it is better for unexpected losses to fall upon the intentional wrongdoer than upon the innocent victim.

**50.**

As a direct and proximate result of Daigle Industries' actions and/or omissions, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

**51.**

ABC, at all times relevant herein, had in full force and effect a policy of insurance coverage in favor of Defendant Daigle Industries, as owner and operator, respectively, of the business, for their connection with the August 12, 2019 incident at issue herein.

Count Two—Hostile Work Environment Based on Race in Violation of 42 U.S.C. § 1981

**52.**

Plaintiff incorporates the abovementioned paragraphs 1 through 51 by reference as though fully set forth herein.

**53.**

42 U.S.C. § 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security

of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

**54.**

"'Make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

**55.**

Plaintiff is a "person within the jurisdiction of the United States."

**56.**

Daigle Industries subjected Plaintiff to unwelcome conduct by forcing her, as a term and condition of her employment, to continue to work in with her assailant.

**57.**

Daigle Industries subjected Plaintiff to unwelcome conduct in its refusal to report the sexual assault to Vicky Finch, Account Payable/Human Resources as a term and condition of her employment.

**58.**

Daigle Industries subjected Plaintiff to unwelcome conduct in its refusal to report the sexual assault to Ethan Daigle, Concrete Production Foreman as a term and condition of her employment.

**59.**

Daigle Industries subjected Plaintiff to unwelcome conduct in its refusal to report the sexual assault to Nicholas Daigle, Chief Operating Officer as a term and condition of her employment.

**60.**

Management level employees knew, or should have known, of the sexual assault and Daigle Industries employees' conduct in relation thereto.

**61.**

Daigle Industries did not exercise reasonable care to prevent the creation of a hostile work environment charged with race discrimination, and did not exercise reasonable care to the sexual assault, even after Plaintiff's repeated asserted to report the incident.

**62.**

Plaintiff's multiple complaints to Daigle Industries' supervisory employees did not cause Daigle Industries to address the sexual assault.

**63.**

The Daigle Industries' actions and/or omission in relation thereto created a hostile work environment for Plaintiff because of her race—she was the sole African American woman trucker.

**64.**

Plaintiff found her work environment to be hostile and heavily charged with race discrimination. This is due to the fact that she is an African American woman who was harassed and treated differently when she reported the assault as opposed to her white female counterpart.

**65.**

A reasonable person of African American race in Plaintiff's position would have found the work environment to be hostile and polluted by race discrimination.

**66.**

As a direct, legal and proximate result of this discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

**67.**

As a direct and proximate result of Daigle Industries' hostile work environment in violation of Section 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief

**68.**

ABC, at all times relevant herein, had in full force and effect a policy of insurance coverage in favor of Defendant Daigle Industries, as owner and operator, respectively, of the business, for their connection with the August 12, 2019 and thereafter incident at issue herein.

**69.**

Daigle Industries' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on race.

**70.**

Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

Count Three—Race Discrimination (Disparate Treatment) in Violation of 42 U.S.C. § 1981

**71.**

Plaintiff incorporates the abovementioned paragraphs 1 through 70 by reference as though fully set forth herein.

**72.**

Upon information and belief, a white female employee, Alicia, filed a sexual harassment claim against Rev, a black male employee. This complaint was accepted and Rev was later terminated despite being cleared of wrong-doing.

**73.**

Daigle Industries' discriminated against Plaintiff by refusing to let her file a sexual harassment complaint and eventually fired her on the basis of her race, African American.

**74.**

Plaintiff's race was the determining factor and/or a motivating factor in Daigle Industries' adverse employment action. While, the a white female employee, Alicia, filed a sexual harassment claim against Rev, a black male employee—such complaint was accepted.

**75.**

As a direct, legal and proximate result of the discrimination, Plaintiff has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

**76.**

Daigle Industries' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff-Intervenor's right to be free from discrimination based on race.

**77.**

Daigle Industries' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on race.

**78.**

ABC, at all times relevant herein, had in full force and effect a policy of insurance coverage in favor of Defendant Daigle Industries, as owner and operator, respectively, of the business, for their connection with the August 12, 2019 incident and thereafter at issue herein.

**79.**

Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

<u>Count Four—Retaliation in Violation of 42 U.S.C. § 1981</u>

**80.**

Plaintiff incorporates the abovementioned paragraphs 1 through 79 by reference as though fully set forth herein.

**81.**

Plaintiff made numerous complaints to Daigle Industries' agents and employees about the employment practice that required Plaintiff, as a term and condition of her employment, to continue working with her assailant and its refusal to allow her to file a sexual harassment complaint.

**82.**

Plaintiff reasonably believed this term and condition of her employment to be unlawful.

**83.**

As a result of Plaintiff's complaints, Daigle Industries' agents and employees took materially adverse actions against Plaintiff, including, but not limited to, writing up for infractions and then discharging her from her employment.

**84.**

Daigle Industries' retaliatory actions would deter a reasonable employee from engaging in protected activity under § 1981. Upon information and belief, this was not done to her white female counterparts.

**85.**

As a direct, legal and proximate result of the discrimination, Plaintiff has sustained including, but not limited to, loss of past and future income, compensation and benefits for which she is entitled to an award of monetary damages and other relief, resulting in damages in an amount to be proven at trial.

**86.**

As a direct and proximate result of Daigle Industries' unlawful retaliatory conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer severe mental anguish and emotional distress, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

**87.**

Daigle Industries' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from retaliation.

**88.**

ABC, at all times relevant herein, had in full force and effect a policy of insurance coverage in favor of Defendant Daigle Industries, as owner and operator, respectively, of the business, for their connection with the August 12, 2019 and thereafter incident at issue herein.

**89.**

Plaintiff is entitled to her reasonable attorneys' fees and costs of suit.

**90.**

Defendants' unlawful retaliatory conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

**91.**

Count Five— Title VII of the Civil Rights Act of 1964 & Louisiana Employment Discrimination Law ("LEDL"), La. R.S. 23:301, *et seq.*

**92.**

Plaintiff incorporates the abovementioned paragraphs 1 through 91 by reference as though fully set forth herein.

**93.**

At all times material to this action there has been in full force and effect a provision of Title VII of the Civil Rights Act of 1964. Plaintiff was a member of a group protected by Title VII and as such asserts her claim of sex discrimination.

**94.**

Ms. Stewart is a member of a protected class as she was female; (2) she satisfactorily performed the duties required by the position; (3) she was discharged on October 23, 2019; and (4) her position did not remain open and was ultimately filled by a male employee.

**95.**

Defendants' actions and/or omission in relation thereto created a hostile work environment for Plaintiff because of her sex.[1]

**96.**

As a direct, legal and proximate result of this discrimination, Plaintiff has sustained economic and emotional injuries, attorney fees, court costs, resulting in damages in an amount to be proven at trial.

**97.**

ABC, at all times relevant herein, had in full force and effect a policy of insurance coverage in favor of Defendant Daigle, as owner and operator, respectively, of the business, for their connection with the October 23, 2019 and actions thereafter, incident at issue herein.

---

[1] Plaintiff did not receive the right to sue letter until September 29, 2021. She did not receive it in the mail.

**98.**

As a result of the unlawful employment practices complained of above, Plaintiff has been deprived of equal employment opportunity, has suffered emotional pain and suffering, inconveniences, mental anguish and loss of enjoyment of life. .

**99.**

As a direct, legal and proximate result of this violation, Plaintiff has sustained economic and emotional injuries, attorney fees, court costs, resulting in damages in an amount to be proven at trial.

**100.**

Plaintiff reserves the right to request a trial by jury in accordance with law.

**101.**

**WHEREFORE, PETITIONER, LANELL STEWART, PRAYS** that:

1. Defendants, **DAIGLE INDUSTRIES, L.L.C.,** and **ABC INSURANCE COMPANY**, each be duly served with a copy of the *Petition*, *along with Exhibit,* and be cited to appear and answer hereto;

2. After the lapse of all legal delays and due proceedings, there be judgement rendered herein in favor of the Plaintiff and against Defendants, **DAIGLE INDUSTRIES, L.L.C., and ABC INSURANCE COMPANY**, individually, jointly, and *in solido*, for such damages as are necessary to fully and fairly compensate Plaintiff, together with judicial interest from date of demand, for all costs of this suit, for expert witness fees, for penalties and attorney's fees as provided by law;

3. For Plaintiff to be granted all further and different relief as the justice and equity of this case would require.

Respectfully Submitted,


/s/Shermin S. Khan


_____

**THE KHAN LAW FIRM, L.L.C.**
Shermin S. Khan (Bar Roll No. 37748)
2714 Canal Street, Suite 300
New Orleans, LA 70119
s.khan@sklawla.com
Telephone Number: (504) 354-9608
Fax Number: (504) 459-2918
*Attorney for Lanell Stewart*


**February 8, 2023.**